UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                   :

I. CONSTRUCTION MANAGEMENT, LLC,     :

                                  :

               Plaintiff,       :

                                  :            20 Civ. 9188 (JPC)

        -v-               :

                                  :            <u>OPINION AND ORDER</u>

M. MELNICK & CO. INC. et al.,         :

                                  :

             Defendants.     :

                                  :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff I. Construction Management, LLC ("ICM") filed this action against Defendants

M. Melnick & Co. Inc. ("Melnick"), its director Adam Melnick (collectively, with Melnick, the

"Melnick Defendants"), and Federal Insurance Company, a/k/a Chubb ("Chubb"), seeking

recovery under a subcontract governing ICM's work on a construction project (the "Project").

Before the Court is the Melnick Defendants' Motion to Dismiss the Amended Complaint pursuant

to Federal Rule of Civil Procedure 12(b)(1), on the grounds that the amount-in-controversy for

diversity jurisdiction is not satisfied. For reasons that follow, the Court denies the motion.

## I.     Background

### A.  Allegations in the Amended Complaint

      The following facts are taken from the Amended Complaint. For purposes of this motion,

the Court accepts these allegations as true and draws all reasonable inferences in the light most

favorable to ICM. *See Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

      Melnick was hired as a general contractor to make improvements to a property located at

220 East 178th Street, Bronx, New York, *i.e.*, the Project. Dkt. 10 ("Amended Complaint" or "Am.

Compl.") ¶ 9.  Around March 2020, Melnick entered into a written contract with ICM, pursuant to which ICM would perform work on the Project as a subcontractor.  *Id.* ¶ 10.  At first, ICM's work "consisted of rock-hammering and excavation for an elevator pit and for foundation underpinning."  *Id.* ¶ 11.  Starting in early May 2020, ICM's work transitioned to assisting with the concrete work for the Project's foundation.  *Id.*  ICM concluded its work on the Project on June 22, 2020, performing a total of $254,255 in work.  *Id.* ¶¶ 15, 36.  ICM has been paid $174,500 by Melnick, resulting in a remaining balance of $79,755.  *Id.* ¶ 15.  In connection with this alleged debt, ICM filed a lien in the amount of $69,255 against the property with the Bronx County Clerk on July 20, 2020 (the "Lien") and filed a payment bond for $79,755 with Chubb on September 21, 2020.  *Id.* ¶¶ 35-44.

ICM brings six causes of action.  As to only Melnick, ICM seeks damages in the amount of at least $79,755, pleading claims of breach of contract, unjust enrichment, and account stated. *Id.* ¶¶ 24-32.  ICM also seeks to recover from the Melnick Defendants at least $79,755, as well as punitive damages in the amount of $100,000, under New York Lien Law Article 3-A.  *Id.* ¶¶ 17-23, 33-34.  ICM brings two claims against Chubb: one claim for $69,255 under the Lien that ICM submitted to the Bronx County Clerk on July 20, 2020, *id.* ¶¶ 35-40, and the second for $79,755 in connection with the payment bond ICM submitted to Chubb on September 21, 2020, *id.* ¶¶ 41-44.

### B.  Procedural History

ICM commenced this action on November 3, 2020.  Dkt. 1.  On November 25, 2020, the Melnick Defendants requested a pre-motion conference to discuss their anticipated motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  Dkt. 7.  At a conference on December 2, 2020, the Court granted leave for ICM to file an amended complaint and set a briefing

2

schedule for the Melnick Defendants' motion to dismiss.  ICM filed its Amended Complaint on December 5, 2020.  Dkt. 10.  On December 16, 2020, the Melnick Defendants moved to dismiss.  Dkt. 14.  ICM filed its opposition brief, with supporting exhibits, on December 30, 2020.  Dkts. 16-19.  The Melnick Defendants submitted a reply brief on January 6, 2021.  Dkt. 20 ("Reply").

## II.    Discussion

The Melnick Defendants argue that the Court lacks jurisdiction over this action because ICM has failed to satisfy the threshold $75,000 amount-in-controversy requirement under 28 U.S.C. § 1332.  Dkt. 14-8 ("Motion to Dismiss") at 1.  The Melnick Defendants contend that even though ICM's Amended Complaint seeks $79,755 in recovery, ICM's own prior demands for repayment reflect an asserted debt owed by Melnick of only $69,255.  *Id.*  They also argue that ICM had previously represented that this $10,500 difference would be billed to non-party FXR Construction, Inc. ("FXR"), another subcontractor on the Project.  *Id.* at 1-2, 4-5.  Finally, the Melnick Defendants assert that the Amended Complaint's brief allegation supporting a claim for punitive damages is too conclusory to support such a claim and therefore does not help ICM clear the amount-in-controversy threshold.  *Id.* at 2, 5-8.  Because the Court holds that the Melnick Defendants have failed to demonstrate to a legal certainty that ICM is unable to recover the $79,755 in damages pleaded in the Amended Complaint, the Court denies the motion.[1]

### A.  Applicable Legal Standards

"'[F]ederal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equip.*

---

[1] Accordingly, the Court does not reach the issue of whether ICM's pleading of $100,000 in punitive damages is sufficient to independently confer jurisdiction over this action.

*& Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).  ICM invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Am. Compl. ¶ 7.  The diversity jurisdiction statute confers original jurisdiction on the federal district courts with respect to "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  The Melnick Defendants argue that diversity jurisdiction is lacking because ICM has failed to adequately allege that the amount-in-controversy exceeds $75,000.[2]

On a motion to dismiss under Rule 12(b)(1), "'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'"  *Nat. Res. Def. Council*, 461 F.3d at 171 (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).  The Court may look to evidence outside the pleadings if jurisdictional facts are in dispute.  *See Pyskaty v Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

When the amount-in-controversy requirement is in dispute, a plaintiff bears the burden of demonstrating to a "reasonable probability" that the $75,000 threshold has been satisfied.  *See id.* (citing *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)).  "This

---

[2] The Melnick Defendants concede that diversity of citizenship is met in this action.  Dkt. 7 at 1.  The Amended Complaint alleges that ICM is a Connecticut limited liability company with its sole member, Patrick Kennedy Jr., residing in Connecticut.  Am. Compl. ¶¶ 1-2.  As for Defendants, the Amended Complaint pleads that Melnick is a corporation, "existing by virtue of the laws of the State of New York" with its principal place of business in New York, that Adam Melnick resides in New York, and that Chubb is an international insurance company with its principal place of business in New Jersey.  *Id.* ¶¶ 3-5.  At the December 2, 2020 conference, the Court confirmed that both Adam Melnick and Patrick Kennedy Jr., also intend to remain in their respective states.  *See Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (explaining that a party's citizenship for purposes of diversity jurisdiction "depends on his domicile," which "has been described as the place where a person has 'his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning'" (quoting 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3612, at 526 (2d ed. 1984))).

burden is hardly onerous," because courts "recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).  To rebut this presumption, a defendant must demonstrate "that the complaint 'was so patently deficient as to reflect to a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'" *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quoting *Wolde-Meskel*, 166 F.3d at 63) (alteration in original); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").  The Second Circuit has set a high bar for overcoming the presumption: "'the legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim.'" *Scherer*, 347 F.3d at 397 (alteration omitted) (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1071 (2d Cir. 1996)). "Defendants are not limited to the pleadings in overcoming this presumption, and a court 'may look outside the pleadings to other evidence on the record.'" *Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 818 (S.D.N.Y. 2019) (quoting *United Food & Commercial Workers Union Local 919, AFL-CIO v. Centermark Props. Meriden Square Inc.*, 30 F.3d 298, 305 (2d Cir. 1994)).

### B. ICM Has Demonstrated to a "Reasonable Probability" that the Amount-in-Controversy Threshold Has Been Met

The issue before the Court turns on whether the Melnick Defendants have demonstrated that ICM is unable to recover, to a legal certainty, the full $79,755 in damages that it now seeks in the Amended Complaint.  The Melnick Defendants note that, while ICM now claims that Melnick owes that amount, ICM took a different position in a June 22, 2020 invoice for work that ICM

performed on Melnick's behalf (the "Invoice").  Dkt. 14-5 at 6.  While the Invoice reflected a subtotal due of $79,755, a line below that amount indicated a credit of $10,500 to Melnick, because that amount would be billed to FXR, another subcontractor on the Project.  *Id.*  Specifically, the Invoice noted that "[c]redit of 3 days @ $3,500 per day, will be billed to Dennis [Vita, President of FXR,] as discussed on 5/21/20 with Adam [Melnick]."  *Id.*  The resulting sum after that credit is $69,255, which falls below the amount-in-controversy threshold for diversity jurisdiction.  *See also* Dkts. 14-3 (ICM's Lien asserting $69,225 as the total amount unpaid by Melnick), 14-6 (letter from ICM's counsel demanding $69,255 from Melnick).  ICM responds that, after drafting the Invoice, it learned that FXR takes the position that Melnick, not FXR, owes the $10,500, thus pushing the amount of damages potentially recoverable from the Melnick Defendants in this lawsuit to over $75,000.  Dkt. 19 ("Opposition") at 2-3, 5.

In support of their arguments as to whether the $75,000 threshold has been satisfied, the parties have submitted various documents for the Court's consideration.  The Melnick Defendants mainly rely on (1) the June 22, 2020 Invoice from ICM to Melnick, Dkt. 14-5; (2) the Lien, which was filed by ICM pursuant to New York Lien Law § 9 on July 20, 2020 and claimed money owed by Melnick, Dkt. 14-3; and (3) a demand letter sent on October 5, 2020, approximately one month before commencement of this action, from ICM's counsel to Melnick's counsel, which appeared to attach the Invoice, Dkt. 14-6.  *See* Motion to Dismiss at 2-5.  All three documents reflect that ICM, as of the date of those documents, sought payment from Melnick in the amount of $69,255.

ICM seeks to account for the discrepancy between the amount demanded in these documents and the amount of damages later sought in the Amended Complaint through Declarations from Dennis Vita, the President of FXR, Dkt. 17 ("Vita Decl."), and Patrick Kennedy, Jr., the managing member of ICM, Dkt. 16 ("Kennedy Decl.").  These declarants explain that, after

concluding its initial work with Melnick, ICM continued to assist FXR on the Project, but ICM and FXR did not discuss compensation for ICM at the time.  Vita Decl. ¶¶ 5-8; Kennedy Decl. ¶¶ 7-9.  According to Kennedy, it was at that point unclear for whom his company was working, and whether ICM should have been billing Melnick or FXR, or a combination of both, for ICM's continued work.  Kennedy Decl. ¶ 9.  On about June 11, 2020, Kennedy met with Adam Melnick to discuss ICM's allocation of work between Melnick and FXR, and they both reviewed a document, prepared by Kennedy, which reflected a daily description of work performed by ICM.  Kennedy Decl. ¶ 10, Exh. B.  Adam Melnick identified the days that he "believed were attributable to Melnick versus attributable to FXR," and marked up Kennedy's document accordingly.  *Id.* ¶ 10.  Vita later reviewed this same document, with Adam Melnick's mark-ups, but Vita took a different view as to what work should be billed to FXR.  Kennedy Decl. ¶ 11; Vita Decl. ¶ 18, Exh. A.  As Vita stated in his Declaration, "Looking at Adam Melnick's mark-ups on [Kennedy's description of ICM's work], I believe Adam Melnick is trying to charge FXR for work that is not in FXR's contract."  Vita Decl. ¶ 18.

Kennedy further asserts that the $10,500 credit on the Invoice was applied by ICM at the direction of Adam Melnick.  Kennedy Decl. ¶ 15.  According to Kennedy, FXR then refused to pay ICM that amount, claiming that the $10,500 amount covered work that should be billed directly to Melnick, not FXR.  *Id.*  Kennedy contends that only after ICM's counsel engaged in a more detailed discussion with FXR did ICM appreciate that Melnick possibly owes ICM the full balance of $79,755.  *Id.* ¶ 16; *see also* Dkt. 18 ¶ 6 (declaration from ICM's counsel asserting that "[a]ny statements by myself that ICM's debt owed was the $69,255 shown in ICM's mechanic's lien and final invoice w[ere] made by me prior to me performing [an] analysis respecting FXR's claim as to the value of work FXR believes ICM performed for FXR").

ICM maintains that this creates a factual dispute as to whether Melnick or FXR owes that $10,500, which pushes the amount-in-controversy over the $75,000.  Opposition at 5.  The Court agrees.  Given the explanation provided by ICM, supported by sworn declarations, and applying the rebuttable presumption of good faith afforded to the amount-in-controversy pleadings of the Amended Complaint, the Court finds that federal diversity jurisdiction has been sufficiently pleaded.[3]

The fact that ICM, prior to the commencement of the suit, demanded payment from Melnick in a certain amount does not necessarily preclude ICM from being able to plead in good faith higher damages based on further developments relevant to the amount possibly owed by Melnick.  ICM contends that, after making the prior demands for $69,255, ICM realized that Melnick, instead of FXR, may in fact owe the additional $10,500.  This factual dispute as to which entity owes that $10,500—Melnick or FXR—is laid out in the sworn declarations that ICM provided to the Court.  *See* Kennedy Decl. ¶¶ 10-12, 15; Vita Decl. ¶¶ 17-18.  Kennedy additionally contends that ICM learned of FXR's position that the $10,500 should be billed to Melnick only after ICM prepared the Invoice and the Lien.  *See* Kennedy Decl. ¶¶ 15-16.  Further, on October 26, 2020, after learning of this information, ICM filed a claim with Chubb asserting that ICM is owed $79,755 for services performed for Melnick on the Project.  Dkt. 14-1 (declaration of Melnick's counsel) ¶ 9; *see* Dkt. 14-7 (Chubb's denial of the claim based on its determination that "there appears to be a bona fide dispute as to the amount owed by Melnick to ICM, if any").  This action was then commenced on November 3, 2020.  Dkt. 1.

---

[3] The Melnick Defendants have not pointed to any authority suggesting that ICM's previous statements of money owed, whether in the Lien, the Invoice, or the demand letter, legally preclude ICM from pursuing damages in the amount of $79,755.  Nor is the Court aware of any such authority.

The questions of whether Melnick is liable to ICM, and if so in what amount, of course go to the heart of this case.  The Melnick Defendants have failed to show to a "legal certainty" that ICM cannot recover the $79,755 it now seeks.  Discovery or testimony at trial may establish that ICM is entitled to recover no damages, the full amount sought of $79,755, or a number somewhere in between.  Discovery also may reveal that FXR is in fact responsible for the disputed $10,500.  But regardless, these are matters that remain in dispute at this stage of the case.  In considering the Melnick Defendants' motion, absent a finding of bad faith, the Court must "only . . . assess the allegations in the plaintiff's complaint and . . . refrain from adjudicating the merits of the case." *Ochoa v. Interbrew Am., Inc.*, 999 F.2d 626, 630 (2d Cir. 1993).

Turning briefly to the question of bad faith, the Court further finds that the Melnick Defendants have failed to establish that ICM made the $79,755 claim "in bad faith in an attempt to feign jurisdiction." *Wolde-Meskel*, 166 F.3d at 63.  Although the Melnick Defendants do not expressly make this argument in their briefs, certain statements in their Reply seem to imply that ICM made the claim for $79,755 in bad faith.  For instance, the Melnick Defendants argue that ICM's statement that there exists "a 'factual dispute as to the extent that ICM's work was performed for Melnick's benefit versus FXR's benefit,'" conflicts with the Amended Complaint, which seeks the full $79,755 amount from Melnick.  Reply at 1 (quoting Opposition at 5).  But again, factual issues are crystalized during discovery, with material factual disputes resolved at trial.  And among the facts to be resolved in this case will be the question of whether Melnick owes ICM for work performed and, if so, how much.  The Court is unable to conclude that ICM's claim for damages from Melnick in the Amended Complaint is so implausible that it was made in bad faith.  The Melnick Defendants also suggest that by failing to add FXR as a defendant here, "ICM has engaged in gamesmanship to manipulate the defendants to this dispute and the amount-in-

controversy." Reply at 1-2. But the Melnick Defendants do not argue, for instance, that FXR's appearance is necessary for the Court to accord complete relief among the existing parties, *see* Fed. R. Civ. Proc. 19(a)(1)(A), nor do they cite any authority for the proposition that a plaintiff must add all possible defendants in an action to establish a good faith basis for its allegations. Having reviewed the record before it, the Court finds that the Melnick Defendants have not demonstrated that ICM's amount-in-controversy allegation was made in bad faith.

### III.    Conclusion

Accordingly, the Court concludes that the Melnick Defendants have failed to demonstrate to a legal certainty that ICM cannot recover $79,755 in monetary damages. Nor have the Melnick Defendants shown that ICM's amount-in-controversy allegation was made in bad faith. The Melnick Defendants' Motion to Dismiss for lack of subject matter jurisdiction is therefore denied.

The Clerk of Court is respectfully directed to close the motion pending on Docket Number 14.

SO ORDERED

Dated: March 22, 2021
       New York, New York

_____
JOHN P. CRONAN
United States District Judge